# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **J.H.-1, T.O., and B.H.**

**No. 17-0781** (Hardy County 17-JA-5, 17-JA-6, & 17-JA-7)

**FILED**

**January 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.H.-2, by counsel Lauren M. Wilson, appeals the Circuit Court of Hardy County's August 3, 2017, order terminating her parental rights to J.H.-1, T.O., and B.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel William P. Jones, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Marla Zelene Harman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred by denying her an improvement period and terminating her parental rights when less-restrictive alternatives existed.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2017, the DHHR filed an abuse and neglect petition against petitioner. Specifically, the DHHR alleged that petitioner exposed the children to her habitual drug usage. The DHHR noted that petitioner had recently given birth to B.H. in January of 2017. Petitioner tested positive for oxycodone upon her admission to the hospital and B.H.'s meconium tested positive for oxycodone, noroxycodone, and noroxymorphine. The DHHR alleged that when questioned about B.H.'s positive test, petitioner stated that she was prescribed medication by her dentist. Notably, this was the same excuse she gave in prior abuse and neglect proceedings initiated after T.O. was born addicted to opiates in 2014. Petitioner delayed prenatal care while pregnant with T.O. and B.H., which the DHHR alleged was a strong indicator of her drug abuse. Finally, the DHHR alleged that petitioner was not cooperative with the DHHR's attempts to

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because a child and petitioner share the same initials, we will refer to them as J.H.-1 and J.H.-2, respectively, throughout this memorandum decision.

1

verify whether she had a valid prescription for oxycodone, that she had not signed a safety plan, and was not responding to the DHHR's attempts to contact her.

In April of 2017, the circuit court held an adjudicatory pre-hearing conference. The circuit court placed J.H.-1 and T.O. with their non-abusing fathers and B.H. in the care of her maternal grandparents. Later in April, another adjudicatory pre-hearing conference was held. At the outset, petitioner tested positive for methadone, oxycodone, and suboxone. Petitioner informed the circuit court that she was seeking outpatient rehabilitative services which were scheduled to begin in May.

The circuit court held an adjudicatory hearing in May of 2017. Petitioner was not present but was represented by counsel. The circuit court was informed that petitioner had not been attending her therapy sessions. The circuit court continued the matter after hearing the testimony of two maternity care nurses from the hospital where B.H. was born. Because petitioner missed the adjudicatory hearing, she was ordered to provide three negative drug screens prior to reinitiating her visitation.

The circuit court held a second adjudicatory hearing in June of 2017. Once again, petitioner failed to attend but was represented by counsel. Petitioner's counsel informed the circuit court that petitioner was scheduled to enter a rehabilitation program in Winchester, Virginia. During the hearing, petitioner's counsel called the facility and was informed that petitioner was scheduled to arrive by 5:00 p.m. that day. The circuit court proceeded with the hearing and heard the testimony of two DHHR workers. Based upon the evidence introduced over the course of the two adjudicatory hearings, the circuit court adjudicated petitioner as an abusing parent because she failed to protect the children and neglected them by exhibiting the same pattern of behavior as in her previous abuse and neglect case. Specifically, petitioner abused controlled substances during her pregnancy with B.H. and exposed all three children to her pervasive drug use.

In July of 2017, the circuit court held a dispositional hearing. The DHHR presented the testimony of a Child Protective Services ("CPS") worker, who testified that petitioner was previously involved in an abuse and neglect proceeding when she gave birth to drug-affected T.O. During those proceedings, petitioner was given an improvement period, which she successfully completed, and the children were returned to her care. The CPS worker noted that, although petitioner completed the prior improvement period, the instant case was initiated against her for similar circumstances. The CPS worker noted that petitioner tested positive for methamphetamine and amphetamine at a multidisciplinary team ("MDT") meeting and subsequently failed to attend two hearings. Regarding petitioner's rehabilitation attempts in the instant proceeding, the CPS worker stated that she completed a thirty-day program. However, petitioner requested that the DHHR arrange housing for her upon her release from the program, yet she failed to contact the DHHR upon her release. Petitioner then testified that she attempted to correct the conditions of abuse and neglect in the home.

Ultimately, the circuit court found that petitioner had a chronic drug abuse problem that had spanned the course of six years and was not likely to improve soon. While the circuit court commended petitioner for completing a rehabilitation program and beginning her recovery, it

noted that she had only recently begun to participate in the proceedings. The circuit court found that petitioner failed to demonstrate that she could provide a permanent and safe home for the children, noting that two of her children were born drug affected, one of whom was born after extensive services were provided during prior proceedings. These services included parenting and adult life skills classes, psychological evaluations, and supervised visitation. As such, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and that termination was necessary for the children's welfare. It is from this August 3, 2017, dispositional order terminating her parental rights that petitioner appeals.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her an improvement period. According to petitioner, her testimony established that she did contact the DHHR upon her successful completion of and release from the rehabilitation program, continued with the aftercare program, and learned how to live without drugs. We disagree. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

---

[2]The respective fathers of J.H.-1 and T.O. are non-abusing parents. The permanency plan for these children is to remain in the homes of their non-abusing fathers. The father of B.H. is currently participating in abuse and neglect proceedings. Reunification remains the goal; however, the concurrent permanency plan for B.H. is adoption by her maternal grandparents.

Petitioner argues that she acknowledged her substance abuse issues and completed a rehabilitation program, demonstrating her ability to successfully complete an improvement period. However, petitioner's efforts as a whole in the underlying proceedings suggest otherwise. This is petitioner's second time participating in abuse and neglect proceedings. Petitioner participated in an improvement period in 2014, following the birth of drug-affected T.O. The DHHR provided petitioner several services and the circuit court eventually granted her an extension of her improvement period. After regaining custody of her children, petitioner continued to abuse drugs such that the instant petition was filed against her after another child was born testing positive for controlled substances. Further, the CPS worker testified that, despite the DHHR's providing services to petitioner in the past, she continued in the same abusive behavior in the underlying proceedings. We have previously held that it is possible for a person to show "compliance with specific aspects of the case plan" while failing "to improve . . . [the] overall attitude and approach to parenting." *W.Va. Dep't of Human Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990). Fully participating in an improvement period necessarily requires implementing the parenting skills that are being taught through services. *In re M.M.*, 236 W. Va. at 115, 778 S.E.2d at 345. The record demonstrates that petitioner received extensive services prior to this abuse and neglect proceeding and yet failed to implement any techniques taught, as evidenced by her giving birth to a second child affected by drugs. Additionally, petitioner tested positive for drugs throughout the proceedings below, failed to attend the two adjudicatory hearings, and only sought treatment for her drug abuse after the second adjudicatory hearing. Petitioner failed to demonstrate by clear and convincing evidence that she was likely to participate in an improvement period if granted. As such, we find no error in the circuit court's decision denying petitioner an improvement period.

Petitioner next argues that the circuit court erred in terminating her parental rights when less-restrictive alternatives were available. Specifically, petitioner states that two of her children remained with their non-abusing fathers and as such, they would not have been harmed had the circuit court implemented an alternative disposition. However, we have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the non[-]abusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W.Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id.* Therefore, petitioner is not entitled to a dispositional alternative to termination of her parental rights simply because her children are with their non-abusing fathers.

Further, we find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

4

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

The record establishes that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. As mentioned, this is petitioner's second time participating in abuse and neglect proceedings. Petitioner knew that her drug abuse could lead to the termination of her parental rights and, despite this knowledge, continued abusing drugs after the prior proceedings were dismissed, eventually giving birth to a second infant with controlled substances in her system. Further, petitioner failed to attend both of her adjudicatory hearings and only sought treatment after the second adjudicatory hearing. While petitioner argues that less-restrictive alternatives to termination were available, we have previously held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Petitioner chronically abused controlled substances over the course of six years. She was provided extensive services throughout her prior case and yet returned to abusing controlled substances. While petitioner did complete a thirty-day rehabilitation program, the record indicates that she previously successfully completed other services in order to appease the circuit court only to fall back into her abusive behavior. Therefore, we find that the circuit court did not err in terminating petitioner's parental rights as there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and termination was necessary for the children's welfare.

Lastly, because the proceedings in circuit court regarding B.H.'s father are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the disposition order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 3, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: January 8, 2018

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

6